IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS DUNN, DENNY ROBINSON, )
and LEONARD KIMBLE, on behalf of )
themselves and a class of others similarly situated, )
 )
    Plaintiffs, )
 ) No. 04 C 6804
   v. )
 ) Judge Robert W. Gettleman
CITY OF CHICAGO, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas Dunn ("Dunn") and Denny Robinson ("Robinson"), individually and on behalf of all others similarly situated, filed a four-count putative class action against defendant City of Chicago ("City") pursuant to 42 U.S.C. § 1983 on October 21, 2004. Plaintiffs allege that while in the custody of the Chicago Police Department ("CPD") as post-arrest detainees, they were subjected to unlawful interrogation room detentions (Count I), deprived of adequate accommodations for sleep (Count II), and detained more than 48 hours before receiving a judicial hearing (Count III). Count IV asserts a respondeat superior claim.

Plaintiffs[1] have moved pursuant to Fed. R. Civ. P. 23 for certification of three classes defined as:

> 1. All persons held in a CPD interrogation or "interview" room for more than sixteen hours in a 24-hour period at any time from March 15, 1999, to the date of the order granting certification in this case.

---

[1]The complaint alleges that Leonard Kimble ("Kimble") was held in an interrogation room for approximately 65 hours under unlawful conditions and without a probable cause hearing, and he is included in the class allegations for all three classes. The motion for class certification, however, does not seek to certify him as a class representative for any class.

II. All persons held in a CPD lock-up or detective division facility between the hours of 10 p.m. and 6 a.m. at any time from March 15, 1999, to the date of the order granting certification in this case.

III. All persons arrested on suspicion of a felony without an arrest warrant and who were detained by the CPD in excess of 48 hours without a judicial probable cause hearing at any time from March 15, 1999, to the date of the order granting certification in this case.

Class I is further defined to "exclude all persons who gave an inculpatory statement while in

CPD custody if:

    (1)    the person was convicted after a trial on the merits at which the statement was admitted, that conviction has not been invalidated, and the resulting sentence has not been discharged, provided that the person also brought a motion to suppress that statement before or during trial; or

    (2)    the criminal case remains pending and the statement has not been suppressed in a pretrial motion or has been suppressed but the suppression order was not appealed by the state within 30 days.

Robinson seeks to represent Class I, and Robinson and Dunn seek to represent Class II and Class III.

Defendant opposes certification of Class I and Class III, arguing that: (1) plaintiffs cannot satisfy the commonality and typicality requirements of Fed. R. Civ. P. 23(a); and (2) the classes are not maintainable under Fed. R. Civ. P. 23(b). Defendant does not challenge certification of Class II. For the reasons set forth below, plaintiffs' motion is granted as to Class III and denied as to Class I.[2]

---

[2]The court notes that both parties have filed briefs in excess of 15 pages (with extensive footnotes) without leave of court and without a table of contents and authorities, in violation of Local Rule 7.1.

## FACTS

Plaintiffs' three proposed classes correspond to three separate categories of claims regarding the treatment of post-arrest detainees held by the CPD.

Class I alleges that detainees were held in interrogation or interview rooms, rather than in lock-up facilities, for more than 16 hours, and that they were subjected to inhumane conditions in violation of the Fourth Amendment to the U.S. Constitution.[3] Interrogation rooms are small, approximately ten feet long eight feet wide, and bare except for a metal bench, which is approximately four feet long and ten inches wide, and a shackling hook on the wall. Under the CPD's Special Order No. 99-02, dated December 3, 1999, detectives and officers are required to "secure all adult prisoners to a restraining device when placing the prisoner in an interview room." There is no toilet in the interrogation rooms. Detainees do not receive regular meal service while in the interrogation rooms, and are "at the whim" of CPD officers and detectives for food, water, and access to bathroom facilities. Detainees become sleep-deprived because the metal bench is not long enough for an adult to lie down on, and "it is not uncommon for detainees to go without food or access to sanitary facilities for much of their detention." Many detainees urinate or defecate on themselves or on the floor.

Unlike the interrogation rooms, lock-up cells contain bunks and toilet facilities, and lock-up detainees receive regular meal service. There are CPD rules and regulations regarding treatment of lock-up detainees. In contrast, the CPD maintains no rule or practice limiting the amount of time that an individual can be kept in an interrogation room, or specifying the care and

---

[3]Plaintiffs clarify in their reply that Class I is limited to warrantless arrestees, and thus the Fourth Amendment's reasonableness standard governs the conditions of confinement.

treatment of arrestees detained in interrogation rooms. According to plaintiffs, no legitimate police purpose is served by holding post-arrest detainees in interrogation rooms rather than lock-up facilities where their conditions of confinement would be improved and regulated. Plaintiffs' basic human needs for food, sleep, hygiene, and access to a restroom were ignored. Plaintiffs allege that the conditions in the interrogation rooms amount to physical and psychological "soft torture," which lead to increased suggestibility for the person being interrogated, and to false confessions.

Class II, which defendant does not challenge, alleges that persons held in lock-up cells overnight were not provided with a mattress or other bedding for the bunks.

Class III alleges that persons arrested without a warrant on suspicion of a felony were held in excess of 48 hours without a judicial probable cause hearing, in violation of the Fourth Amendment to the U.S. Constitution. Under the CPD's "hold past court call" procedure, the CPD extends an arrestee's detention until the Cook County State's Attorney decides whether to approve charges. Plaintiffs allege that this procedure existed for decades and was widespread, and was applied to class members even though it was held unconstitutional in <u>Robinson v. City of Chicago</u>, 638 F. Supp. 186 (N.D.Ill. 1986)[4]. In August 2003, the CPD adopted a policy prohibiting detentions in excess of 48 hours, but according to plaintiffs the new policy has not been properly implemented. For example, Dunn alleges that in 2004 he was detained for 56 hours without a judicial hearing.

---

[4]In <u>Robinson</u>, the trial court determined that the practice of holding detainees for excessive periods without judicial approval violated the Fourth Amendment, and enjoined the "hold past court call" procedure. The Seventh Circuit reversed the injunction on standing grounds, holding that the plaintiffs' claims were moot because their damage claims were settled prior to the district court's ruling. <u>Robinson v. City of Chicago</u>, 868 F.2d 959 (7th Cir. 1989).

## DISCUSSION

Fed. R. Civ. P. 23, which governs class actions, requires a two-step analysis to determine if class certification is appropriate. First, plaintiffs must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993). These elements are a prerequisite to certification, and failure to meet any one of them precludes certification of a class. Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 International Teamster Health and Welfare Fund, 1999 WL 755051, at *2 (N.D. Ill. Sept. 3, 1999) (and cases cited therein).

Relevant to the instant case, Rule 23(b)(3) requires plaintiffs to demonstrate that: "(1) common questions must predominate over any questions affecting only individual members; and (2) class resolution must be superior to other methods for the fair and effective adjudication of the controversy." Portis v. City of Chicago, 2003 WL 22078279, at *3 (N.D. Ill. Sept. 8, 2003) (quoting Joncek, 1999 WL 755051, at *7). Plaintiffs have the burden of showing compliance with Rule 23. Cwiak v. Flint Ink Corp., 186 F.R.D. 494, 496 (N.D. Ill. 1999). Defendant challenges certification of Class I and Class III on several grounds, but focuses its Rule 23(a) arguments on typicality and commonality. Defendant also argues that plaintiffs fail to satisfy Rule 23(b)(3) because class claims do not predominate, and class resolution is not superior.

I.      **Rule 23(a): Commonality and Typicality**

Defendant objects to certification of Classes I and III on the basis that the proposed

classes fail to satisfy the commonality and typicality requirements of Rule 23(a). "A common

nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule

23(a)." Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992), cert. denied 506 U.S. 1051

(1993). The presence of some factual variation among class members' experiences will not

defeat class certification. Id. at 1017. A plaintiff need only show that there is at least one

question of fact common to the class to satisfy the commonality requirement. Portis v. City of

Chicago, 2003 WL 22078279, at *2 (N.D.Ill. Sept. 8, 2003); In re VMS Sec. Litig, 136 F.R.D.

466, 473 (N.D.Ill. 1991). Typicality is satisfied if a plaintiff's claim arises from the same event,

practice, or course of conduct that gives rise to the claims of the other class members, and the

claims are based on the same legal theory. Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998);

Kort v. Diversified Collections Services, Inc., 2001 WL 1617213, at *3 (N.D.Ill. Dec. 17, 2001).

Commonality and typicality are closely related, and finding one often results in find the other. Id.

For the reasons discussed below, the court finds that Class I and Class III satisfy the requirements

of Rule 23(a).

A.      **Class I**

Plaintiffs argue that there are several questions of fact and law common to Class I. Class

I alleges that defendant is liable under Monell v. Dept. of Social Services, 436 U.S. 658 (1978),

for violations of the Fourth Amendment based on: (1) the maintenance of an unconstitutional,

6

written policy requiring shackling of detainees held in interrogation rooms[5]; (2) the failure to enact policies limiting the amount of time a detainee may be held in an interrogation room; (3) the failure to establish policies for food services and other humane treatment for persons held in the rooms; (4) the failure to provide proper sleeping facilities for persons held in the rooms, including bedding; and (5) the deliberately indifferent failure to correct a repeated pattern of neglect of the human needs of persons held in interrogation rooms.

Defendant argues that Class I lacks commonality because plaintiffs were not subjected to standardized conduct or conditions. See Allen v. City of Chicago, 828 F. Supp. 543, 551 (N.D.Ill. 1993) (commonality requirement met when there is "standardized conduct by defendants toward members of the putative class"). Defendant asserts that the deposition testimony of plaintiffs, other class members, and defendant's witnesses demonstrate differences in CPD practices and the experiences of detainees. Indeed, some class members testified that they were offered food and water by some CPD officers while being held in the interrogation room, and that they were permitted to use the restroom facilities when they asked. Some class members also testified that they were not handcuffed, or not always handcuffed, in the interrogation room. According to defendant, these variations necessitate individualized inquiry and preclude class treatment.

The variations identified by defendant in the actual treatment of certain detainees, however, do not eliminate the common nucleus of fact alleged in Class I: all of the detainees were held for an unlawful period of time (greater than 16 hours) in interrogation rooms that lacked the most basic amenities. See Portis v. City of Chicago, 2003 WL 22078279, at *2

---

[5]The policy is contained in Special Order No. 99-02 dated December 3, 1999, which requires detectives and interrogators to "secure all adult prisoners to a restraining device when placing the prisoner in an interview room."

7

(N.D.Ill. Sept. 8, 2003) ("A class action will not be defeated solely because of some factual differences among the class members' grievances.") (quoting Heastie v. Community Bank of Greater Peoria, 125 F.R.D. 669, 675 (N.D.Ill. 1989). Indeed, defendant concedes that the lack of a place to sleep is common to all class members.[6] Even if the lack of a place to sleep did not provide sufficient commonality, plaintiffs were subject to the Special Order requiring that all detainees remain in restraints while held in an interrogation room. Plaintiffs also allege that they were all at the mercy of "their interrogators" for food and water, and for access to the restroom.

Defendant's arguments against class certification based on factual differences are unpersuasive. The fact that certain detainees were treated marginally better on an ad hoc basis than others does not alter plaintiffs' allegations that they were subject to the standard practice of prolonged detention in interrogation rooms rather than the lock-up without a legitimate police purpose, and that the interrogation rooms are inherently unfit for human occupancy for more than a few hours. See Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) ("[C]ommonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."). Defendant objects that the variations in treatment may affect damage calculations, but, as discussed below, individual damage calculations do not preclude class certification. Defendant does not dispute that all Class I members assert a common legal claim under the Fourth Amendment for unlawful conditions of confinement. Plaintiffs' Class I claims therefore satisfy the commonality requirement of Rule 23(a).

---

[6]Defendant argues that this claim in Class I is redundant of the Class II claim that no bedding is provided to detainees held in lock-up cells overnight. The Class I and Class II claims, however, are patently different because they refer to different holding facilities, and the lack of a place to sleep is not analogous to the lack of bedding for the bunk provided.

Defendant does not clearly articulate how Class I fails to satisfy the typicality claim. Plaintiff Robinson, who is the proposed representative of Class I, testified that he was held in an interrogation room, and he brings his claim under the same Fourth Amendment legal theory as the rest of Class I.[7] Robinson thus satisfies the typicality prong. See Keele, 149 F.3d at 595 (typicality is satisfied when the plaintiff's claim arises from the same practice or course of conduct that give rise to the claims of the putative class members, and has the same essential characteristics of the class at large); De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) ("Similarity of legal theory is more important than factual similarity.").

Defendant is correct, however, that Robinson's Class I claims are time-barred. The parties agree that a two-year statute of limitations applies to § 1983 claims. See Pitts v. City of Kankakee, 267 F.3d 592, 597 (7th Cir. 2001). Plaintiffs argue that all of their claims relate back to the original complaint filed in Lopez v. City of Chicago, case no. 01 C 1823, on March 15, 2001. The first complaint in Lopez asserted individual § 1983 and state law claims against the City and several detectives and police officers. On October 24, 2002, Judge Darrah granted the plaintiff's motion to file a second amended complaint adding class allegations regarding the "hold past court call" policy and the practice of the CPD that is raised by Class III in the instant case. Lopez, 2002 WL 31415767, at *3 (N.D.Ill. Oct. 25, 2002). The plaintiff in Lopez sought to certify one putative class only, which he defined as:

> All persons arrested by the [CPD] without an arrest warrant and who were detained in excess of 48 hours pending approval of felony charges by the State's Attorney at any time from March 15, 1999, to the present day.

---

[7]Defendant argues that Dunn cannot serve as Class I representative because he testified that he was held in an interrogation room for a few hours only. Dunn, however, seeks to represent Class II and Class III only, not Class I.

Judge Darrah held that the class claims related back to the original complaint under Fed. R. Civ. P. 15(c), and thus the actionable class period extended back to March 15, 1999, which was two years prior to the filing of the original complaint. The proposed Lopez class was never certified. After Lopez was transferred to the calendar of Judge Der-Yeghiayan, the plaintiff filed a motion for class certification, which was fully briefed by the parties. On May 20, 2004, Judge Der-Yeghiayan granted the plaintiff's motion to withdraw his motion for class certification and proceed to trial on his individual claims.

The filing of a class action suit tolls the statute of limitations for all the members of the putative class. Culver v. City of Milwaukee, 277 F.3d 908, 914 (7th Cir. 2002); see also Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983) (limitations on class members' claims are tolled during the pendency of a class action). The question, then, is whether the class allegations in Lopez tolled the class allegations in the instant case. Plaintiffs correctly assert that Lopez "included a count for interrogation room detentions" because Count II of the second amended complaint in Lopez alleged that plaintiff and the class members "have been subjected to torturous conditions of confinement while being held in the custody of the CPD," including many of the deprivations alleged in the instant complaint. The definition of the putative class in Lopez, however, referenced the 48 hour rule only.

Although neither party expressly addresses this issue, it is the proposed definition of the class, not the content of the class allegations, that is relevant to the tolling question. That is, only the claims of plaintiffs who would have been included in a putative class are tolled. The Supreme Court emphasized class membership in Crown, Cork & Seal, holding that the commencement of a class action suspends the applicable statute of limitations as to "all asserted

10

members of the class that would have been parties had the suit been permitted to continue as a class action." 462 U.S. at 353. Lower courts have also focused on the identity of class members, not the class allegations. See, e.g., Spann v. Community Bank of Northern Virginia, 2004 WL 691785, at *5 (N.D. Ill. Mar. 20, 2004) (plaintiff must be included in putative class to toll statute of limitations); In re Brand Name Prescription Drugs Antitrust Litig., 1998 WL 474146, at *8 (N.D.Ill. Aug. 6, 1998) (tolling doctrine is designed to benefit a "group — the class and its putative members.").

In the instant case, plaintiffs' class allegations were tolled by the filing of Lopez only to the extent that the class definitions here match the class definition proposed in Lopez. Lopez did not define any class regarding conditions of confinement in the interrogation rooms. The definition of Class I therefore asserts a new class; consequently, the Class I claims were not tolled by Lopez.[8] Plaintiffs filed their class complaint in the instant action on October 12, 2004, and Class I may therefore include persons detained after October 12, 2002. Accordingly, Robinson, who was arrested and held in October 2000, is barred by the statute of limitations from representing or being a member of Class I.

Because Robinson is the only plaintiff seeking to represent Class I and his claims are time-barred, the court cannot certify Class I at this time.[9] The court will consider granting

---

[8]Similarly, Class II, comprised of detainees housed in the lock-up facilities without a mattress or bedding, was not tolled by Lopez because the Lopez class definition did not include these claims.

[9]The court notes that Robinson's Class II claims are time-barred as well, but that Dunn also seeks to represent Class II and his claims are within the actionable period.

11

plaintiffs leave to file an amended complaint naming a qualified class representative for Class I.

**B.     Class III**

Class III assets a claim under the Supreme Court's holdings in Gerstein v. Pugh, 420 U.S. 103 (1975), and County of Riverside v. McLaughlin, 500 U.S. 44 (1991). Class III alleges that defendant unreasonably delayed obtaining judicial approval before detaining Robinson, Dunn, and the other class members for more than 48 hours after a warrantless arrest. Plaintiffs argue that defendant is liable under Monell based on: (1) the failure to enact a policy requiring adherence to the 48-hour rule; (2) the failure to provide proper training on the 48-hour rule and to discipline violations of the rule; and (3) deliberate indifference to the widespread use of the "hold past call procedure" and to the volume of detentions lasting more than 48 hours without judicial approval.

Gerstein holds that the Fourth Amendment requires a determination of probable cause by a judicial officer "promptly" after a warrantless arrest. McLaughlin holds that determinations of probable cause that occur within 48 hours of arrest are generally "prompt" and thus comply with the dictates of Gerstein. The are exceptions, however, to the 48 hour rule. Relevant to the Class III claims, probable cause hearings provided beyond the 48 hour window may be found constitutional, but the defendant bears the burden of proof "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." McLaughlin, 500 U.S. at 57.

Defendant fails to clearly distinguish its Rule 23(a) arguments and its Rule 23(b)(3) objections to Class III. Defendant points out that during the proposed class period from 1999 to the present, the CPD followed different policies and practices with respect to detention. In particular, effective August 15, 2003, the CPD amended General Order No. 02-03, to prohibit

12

detaining anyone over 48 hours for any reason. According to defendant, after August 15, 2003, "there can be no municipal liability for the 'random and unauthorized intentional conduct of its employees' if a detective violates that order." Defendant also argues that plaintiffs "need to make separate proofs regarding the three time periods and they need three separate class representatives to represent the class members for each period."

Plaintiffs respond that although defendant's written policies, including the amendment to General Order 02-03, have some bearing on municipal liability, the gravamen of plaintiffs' Class III claims focus on an well-established and widespread practice within the CPD of using unlawfully long detentions. Indeed, plaintiffs' claims rely on evidence that the illegal practice endured despite the policy changes implemented in August 2003. The practice, not the written policies, is the focus of plaintiffs' claims, and changes in the policies of the CPD over time thus do not preclude class certification. De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact."). Similarly, it is not necessary for a class representative to have been detained during each of the three periods. See Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596-97 (7th Cir. 1993) ("[T]he typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.").

Defendant also argues that the case law establishes valid exceptions to the 48 hour rule, and thus it may have other defenses to some class members' claims. Under McLaughlin, the government may prove that a detention longer than 48 hours was not unreasonable by

demonstrating "the existence of a bona fide emergency or other extraordinary circumstance" to justify that detention. 500 U.S. at 57. As plaintiffs point out, such an exception is inherently unusual, and thus would apply to no more than a handful of identifiable class members.[10] In other words, the common predominant issues cannot be ignored in favor of the existence of a handful of extraordinary circumstances.

In addition, the Cook County court system permits probable cause hearings to be held ex parte if the detainee is prevented from appearing in court due to "exigent circumstances," which makes it even less likely there would be a legitimate excuse for failing to provide a probable cause determination within 48 hours. Moreover, the existence of individualized defenses does not preclude class certification. See, e.g., Portis, 2003 WL 22078279 at *3 ("Individual affirmative defenses do not preclude class treatment."); Pinkett v. Moolah Loan Corp., 1999 WL 1080596, at *4 (N.D.Ill 1999) ("[I]t is well established that individual counterclaims or defenses do not render a case unsuitable for class certification."). Indeed, McLaughlin was a class action.

Defendant cites Robinson v. Gillespie, 219 F.R.D. 179 (D.Kan. 2003), which denied class certification of McLaughlin detention claims, but Robinson is readily distinguishable. The proposed class in Robinson included any person who did not receive a "prompt" probable cause determination. The Robinson court held that the failure to specify a number of hours would require the court to "examine the specifics of [each] case" to determine whether a person falls

---

[10]In a footnote, defendant cites Lopez v. City of Chicago, 2005 WL 711986, at *2 (N.D.Ill. March 23, 2005), in which Judge Der-Yeghiayan granted the defendant's motion for judgment as a matter of law regarding the plaintiff's McLaughlin claim. Judge Der-Yeghiayan held that the plaintiff's provision of false alibis and a recanted confession constituted extraordinary circumstances that justified detaining him for five days without judicial approval. The court is neither persuaded nor bound by Judge Der-Yeghiayan's reasoning in Lopez, which is currently on appeal.

within the class. Id. at 183. Plaintiffs in the instant case, by contrast, provide an objective definition of Class III in terms of a quantifiable number of hours, and thus the concerns of the Robinson court are inapplicable here. Contrary to defendant's characterization, the Robinson court did not hold, or even suggest, that a properly defined McLaughlin class could not be certified.

Accordingly, Class III satisfies the commonality and typicality requirements of Rule 23(a).

Unlike Class I and Class II, the class definition in Lopez included the same putative class members as Class III in the instant case. Thus, Lopez tolled the statute of limitations for Class III. Defendant argues that it was prejudiced because the Lopez class allegations were withdrawn in May 2004, and that the class period should therefore extend no further than two years before the filing of the Lopez class action. The court is unpersuaded, however, because defendant fails to point to any actual prejudice and does not explain why refusing to relate the instant case back to the filing of the initial Lopez complaint on March 15, 2001, would alleviate any such prejudice. Moreover, defendant did not object to the plaintiffs' motion to withdraw the class allegations in Lopez.

Defendant argues, alternatively, that Class III can extend "at the very most back to August 1999" because the statute of limitations was running on all claims during the five months between the voluntary dismissal of the class allegations in Lopez and the filing of the instant action. See Culver v. City of Milwaukee, 277 F.3d 908, 914 (7th Cir. 2002) (statute tolled while class action claims are pending begins to run again when the class claims are dismissed). Plaintiffs argue that the statute remained tolled under the Illinois' savings statute, 735 ILCS 5/13-

217, which tolls limitations for one year following voluntary dismissal. The Seventh Circuit has held that the savings statute cannot rescue federal claims. <u>Beck v. Caterpillar Inc.</u>, 50 F.3d 405, 407 (7th Cir. 1995) ("The law is clear. When a plaintiff voluntarily dismisses a lawsuit which was brought in federal court, asserts a purely federal claim, and is subject to a federal statute of limitations, state savings statues do not apply."). Five months passed un-tolled after the class allegations in <u>Lopez</u> were dismissed, and must be subtracted from the Class III time period.

Accordingly, the actionable time period for Class III begins August 15, 1999.

## II.    Rule 23(b)(3)

Defendant asserts that both Class I and Class III fail to meet the requirements of 23(b)(3). Certification under this rule requires that: (1) common questions must predominate over any questions affecting only individual members; and (2) class resolution must be superior to other methods for the fair and effective adjudication of the controversy. <u>Portis</u>, 2003 WL 22078279, at *3.

Defendant first argues that many of the putative class members' claims are barred by the the Supreme Court's holding in <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994), that a person cannot bring a § 1983 action challenging "actions whose unlawfulness would render a conviction or sentence invalid." Under <u>Heck</u>, to recover damages for harms "caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ habeas corpus." 512 U.S. at 586-87. In the instant case, in order to eliminate class members whose claims may be precluded by <u>Heck</u>,

16

plaintiffs exclude from Class I persons who made an inculpatory statement while in CPD custody and meet certain other conditions relevant to Heck considerations.

Defendant does not contest that plaintiffs' proposed class excludes members that would implicate Heck, but argues that the factual determinations necessary to decide if a class member fits within the exclusions are difficult and individualized. Plaintiffs respond convincingly that all of the information necessary to make this determination can be easily obtained using "electronic data readily obtained from the Cook County Circuit Court and the Illinois Department of Corrections." In addition, the application of the exclusion proposed in Class I is a purely ministerial issue that can be determined prior to trial and will not predominate. See Wells v. McDonough, 188 F.R.D. 277, 279 (N.D.Ill. 1999); Avila v. Van Ru Credit Corp., 1995 WL 22866, at *7 (N.D.Ill. 1995). Heck therefore poses no bar to the certification of Class I.[11]

Repeating many of its Rule 23(a) arguments, defendant asserts that common questions do not predominate Class I because detainees were treated differently while held in the interrogation rooms, and analysis of the constitutionality of the conditions of confinement requires individualized inquiry. Defendant cites several cases, such as Ruff v. Godinez, 1993 WL 239045, at *3 (N.D.Ill. June 28, 1993), holding that whether certain conditions of confinement violate a constitutional standard can be determined only on an individual, case by case basis. Defendant, however, takes these holdings out of context and misconstrues plaintiffs' claims in the instant case. First, Ruff was not a class action. Second, the general principle that there is no

_____

[11]Defendant asks in a footnote why the Class I exclusion does not apply to Class III, but does not expressly object to the certification of Class III based on Heck. The court notes that the Class III claims do not implicate Heck concerns because the presumption that a delay in excess of 48 hours is unlawful is rebuttable. See McLaughlin, 500 U.S. at 57. Finding 48 hour rule violations by defendant, therefore, would not implicate class members' convictions.

17

static definition of an unlawful condition of confinement, see Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981), does not prevent class treatment of allegations that certain conditions common to all interrogation rooms are unlawful. Courts routinely address conditions of confinement claims in class actions. See, e.g. Rhodes; Davenport v. DeRobertis, 844 F.2d 1310 (7th Cir. 1988); Rahim v. Sheahan, 2001 WL 1263493 (N.D.Ill. Oct. 19, 2001); Lewis v. Washington, 197 F.R.D. 611 (N.D.Ill. 2000).

Defendant cites Alkire v. Irving, 330 F.3d 802, 820-821 (6th Cir. 2003), and McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984), which affirmed the denial of class certification. Both cases, however, are distinguishable. For example, in Alkire, the district court found that individual issues predominated in an unlawful detention and debt collection case because there were "varying reasons for the arrests, varying lengths of stay in jail, varying financial situations, [and] varying reasons for contempt adjudications" among proposed class members. The factual variations in the instant case are much less significant to the legal questions at hand, and do not outweigh the common facts, as discussed above.

As plaintiffs correctly observe, while the legality of each condition of confinement must be determined on a case by case basis, each class plaintiff's experience does not require individual analysis. That is, if it is unlawful to hold detainees for prolonged periods in interrogation rooms without a toilet, bed, or regular meal service, it is unlawful as to each class member regardless of factual variations in their actual experiences while in custody. That some detainees may have been more or less deprived, or "tortured" in plaintiffs' conception, does not impede the court's ability to adjudicate whether the shared deprivations suffered by all members of Class I violated the Constitution. See Gary v. Sheehan, 1999 WL 281347, at *2 (N.D.Ill. Mar.

18

31, 1999) ("[I]t is common for Rule 23(b)(3) class actions to involve different levels of injury and damages for different class members; however, that does not mean that certifying a class under Rule 23(b)(3) is incorrect."). Similarly, whether defendant is liable for failing to have a policy against detentions in excess of 48 hours prior to August 15, 2003, and for failing to implement that policy properly clearly does not require individual analysis. Any possible defenses to violations of the 48 hour rule based on "extraordinary" circumstances, as discussed above, do not predominate.

Plaintiffs concede that the assessment of damages "is the only issue which presents any serious questions of individualized proof," but this does not preclude class treatment. See Williams v. Rizza Chevrolet-Geo, Inc., 2000 WL 263731, at *3 (N.D.Ill. Mar. 6, 2000) ("[T]he possibility of individualized damage inquires does not defeat class certification even if individual hearings ultimately may be required." Indeed, if necessary, a court can divide class plaintiffs into sub-classes for damage purposes. In Portis, for example, this court certified a class and noted that damage sub-classes could be created if the plaintiffs succeed in establishing the class's right to damages. 2002 WL 22078279, at *4; see also Rahim, 2001 WL 1263493, at * 14 (Schenkier, M.J.) (recommending certification of class and noting individual damages issues "can be addressed through the creation of subclasses"). A similar procedure could be followed in the instant case if necessary.

The second requirement under Rule 23(b)(3) is that class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. Because common issues predominate and the named plaintiffs are typical and adequate class representatives, as discussed above, the instant case meets this requirement. Requiring each class

member to bring a separate action would be a waste of time and money.  See <u>Markham v. White</u>, 171 F.R.D. 217, 224 (N.D.Ill. 1997).  In addition, it is likely that many individual members would forfeit their claims if they could not pursue them as a class because of the expense and complexity of litigating a <u>Monell</u> claim against a municipality.  See <u>Portis</u>, 2003 WL 22078279, at *2.

Accordingly, Class I and Class III satisfy the requirements of Rule 23(b)(3).

## CONCLUSION

For the reasons stated above, the court grants plaintiffs' motion for class certification with respect to Class III and certifies a class defined as: All persons arrested on suspicion of a felony without an arrest warrant and who were detained by the CPD in excess of 48 hours without a judicial probable cause hearing at any time from August 15, 1999, to the date of this order.

The court certifies Class II by agreement, defined as: All persons held in a CPD lock-up or detective division facility between the hours of 10 p.m. and 6 a.m. at any time from October 12, 2002, to the date of this order.

The court denies plaintiffs' motion as to Class I.

This matter is set for a status hearing on October 18, 2005, at 9:30 a.m. at which time: (a) plaintiffs' counsel shall inform the court whether they wish to file an amended complaint naming a qualified representative for Class I; and (b) the parties shall discuss notifying the members of Classes II and III of the pendency of this action.

**ENTER:**     **October 5, 2005**

_____

**Robert W. Gettleman**
**United States District Judge**