IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS DUNN, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 04-C-6804 |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Gettleman |
| | ) | |
| Defendant. | ) | Magistrate Judge Schenkier |

**PLAINTIFFS' STATUS REPORT REGARDING
IDENTIFICATION OF THE CLASS MEMBERS**

Plaintiffs Thomas Dunn, Denny Robinson, Veronica Imperial, and Leonard Kimble, by their attorneys, Loevy & Loevy, respectfully submit this status report on the progress of identifying the members of Classes I-III.

**Background**

Since the Court's June 2, 2006 hearing, Plaintiffs have received and analyzed two databases maintained by the Chicago Police Department ("CPD") regarding its arrests and detentions during the class period: the CRIS database, and the Automated Arrest database. Together, the databases contain approximately 1.5 million arrests.

As the Court will recall, much of the CRIS data was created by CPD lock-up keepers inputting select fields from paper arrest records at the time of booking. It is the database that covers the majority of the class period (containing approximately 1.3 million arrests). During the later portions of the class period, the CPD began using the Automated Arrest system, which is an electronic arrest report. The AA data is much more complete than the CRIS data in that it covers

all fields of the arrest report, while CRIS covers only select fields inputted by the lock-up keeper. In certain instances, the AA data is also more accurate than the CRIS data. These limitations of the CRIS database are discussed in greater detail below.

## Discussion

### 1. The 48-hour class (Class III)

To identify the members of the 48-hour class, Plaintiffs used the arrest date and time associated with each arrest in the two databases and compared this information to the earlier of the initial court date or the arrestee's release (where this information was captured). Based on the data currently available, Plaintiffs have identified approximately 9,400 members of this class from the two databases.

The data in the AA database was sufficient to identify what Plaintiffs believe to be all class members whose arrests are covered by the AA database. However, there were two deficiencies with the CRIS database that made it insufficient to identify all of the class members whose arrests are covered by the database.

First, as Plaintiffs explained in their previous status report, there was a practice among some lock-up keepers when entering the arrest report data to input the date and time when the arrestee arrived in lock-up rather than the earlier actual date and time of arrest. For example, Joseph Lopez was arrested on July 20, 2001 and held by the CPD for a total of five days. He spent the first two days in an interrogation room before being brought to the lock-up to be booked on July 22. While Mr. Lopez' paper arrest record accurately reflects this information, his CRIS record shows an arrest on July 22 at about the time he was booked. In other words, Mr. Lopez' detention as reflected in CRIS is two days too short.

2

The same problem is potentially present, at least to some degree, for each of the approximately 1.3 million records in the CRIS database. Plaintiffs had initially proposed to address the arrest data entry problem by obtaining from Chicago and inputting all paper arrest records where CRIS showed an arrest time less than one hour before the booking time (on the assumption that these were most likely to be the result of lock-up keeper entering the wrong arrest time). However, CRIS data revealed that there were well over 300,000 such records.

Accordingly, Plaintiffs retained a statistician and to analyze the problems with the arrest data. He determined that a random sample of 3,000 paper arrest reports should be sufficient to draw conclusions about how many additional class members would likely be identified were Plaintiffs to obtain (and Chicago to produce) the paper arrest records covered by CRIS. Plaintiffs sought this opinion so that the Court may consider it in deciding whether these additional class members may be "identified through reasonable effort" as is required for individualized notice under Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs are still awaiting Chicago's production of the 3,000 paper records. The statistician will be able to complete his report shortly after that production.

The second problem with the CRIS data is that almost 600,000 of the records contained no data regarding either the initial court date or the bond date. (Normally this information is contained in the paper arrest record, and it is unclear why the CRIS data included it for only approximately half of its entries.) That data is needed to determine the time of release from custody for these arrestees and thus the 48-hour calculation.[1] The 3,000 record random sample will also allow the statistician to opine on the likely number of additional class members who would be included based on the time of the initial court date or the bond date.

---

[1] Nevertheless, Plaintiffs were able to identify an additional 750 class members within this 600,000 using the elapsed time between arrest and booking. Because booking precedes release, and because these 750 persons were not booked until more than 48 hours after arrest, it was possible to include them as class members even without the bond and initial court data.

3

### 2. The Interrogation Room Class (Class I)

Using the data currently available, Plaintiffs have identified approximately 15,000 members of the interrogation room class from the two databases. For the AA database, Plaintiffs are still awaiting production of a set of additional fields which Chicago has promised but which are overdue. Once those fields are received, Plaintiffs will be able to complete their identification of the class members in the AA database, and they anticipate that this will include all class members whose arrests are covered by the AA database.

However, there were, again, two deficiencies with the CRIS database that made it insufficient to identify all of the class members whose arrests are covered by that database. First, as explained above, the arrest date and time was sometimes inputted incorrectly by the lock-up keeper. Where present, this error affects the calculation for the length of the interrogation room detentions in the same manner as it affects the 48-hour calculation. Second, while the AA database contains a field for movement of an arrestee into and out of lock-up, CRIS has no such field. Therefore, it is useless for identifying those class members who may have been held in an interrogation room following booking (as opposed to between arrest and booking). Both of these issues will be addressed by the statistician's report discussed above, in that it will provide information about the likely results for how many additional class members would be identified were Plaintiffs to obtain the paper arrest records covered by CRIS.

### 3. The Overnight Class (Class II)

Plaintiffs have currently identified approximately 51,000 members of the overnight class from the two databases and are still in the process of identifying some of the class members from

4

the CRIS database.[2] Plaintiffs believe that each of the two databases contains sufficient information to identify all of the class members whose arrests are covered by that database.

### 4. Updating the class period

Plaintiffs anticipate bringing a motion to update the definition of the three classes to include persons whose arrests have occurred since the Court's Order certifying classes II & III on October 5, 2005 and Order certifying Class I on June 2, 2006.

RESPECTFULLY SUBMITTED,

/s/ Michael Kanovitz
One of Counsel for Plaintiffs

Arthur Loevy
Michael Kanovitz
Jon Loevy
Russell Ainsworth
312 N. May St., Suite 100
Chicago, Il 60607
(312) 243-5900

### CERTIFICATE OF SERVICE

I, Michael Kanovitz, an attorney, certify that on August 10, 2006, I sent by electronic means a copy of the attached Motion to all counsel of record.

/s/ Michael Kanovitz

---

[2] Plaintiffs were able to use the automatically-generated "booking posted" field to determine when an arrestee arrived in lock-up, thereby avoiding the problems associated with the inaccurate input of the arrest date and time.

5