# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS DUNN, et al., | ) | |
| | ) | |
| Plaintiff, | ) | 04-CV-6804 |
| | ) | |
| v. | ) | Judge Gettleman |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF TED DABROWSKI

Pursuant to 28 U.S.C. § 1746, Ted Dabrowski. declares under penalty of perjury as follows:

1. My name is Ted Dabrowski. I am an Independent Consultant engaged in public policy research and data consulting. I am a former Managing Director of various business units of Citibank's international branches. I hold an MBA in Finance from the Wharton School at the University of Pennsylvania and a Master in Public Policy from the University of Chicago's Harris School. I have personal knowledge of the facts set forth in this declaration, and if called as a witness could testify competently thereto. I have been engaged by the City of Chicago ("City") as a data consultant since March 2008. I submit this declaration to describe and provide proof of the creation of the mailing lists for the Notice and Claim Form (the "Notice Packet") to verified and potential Class Members.

2. I have been asked by the City to analyze the arrest record data produced by the Chicago Police Department ("CPD") to the Plaintiffs in this case, as it was compiled and produced back to the City by the Plaintiffs. In particular, I was asked to analyze the data to determine the percentage of arrestees who were held for varying lengths of time by the CPD. I

was further asked to analyze the data to determine which individuals were verified class members, which individuals were definitively excluded from the classes and which individuals could not be definitively included in class membership from the data. I used this information to create lists from which the parties sent Individual Notice.

3. There were two groups of arrest record data: (1) arrest records captured on paper arrest reports, and (2) arrest records captured by the automated arrest software that the CPD began to implement in 2003. I reviewed both types of data for my analysis.

4. I understand that the paper arrest reports were produced to Plaintiffs' counsel, and that Plaintiffs' counsel had a data-entry firm enter selected fields of data from the paper arrest records into Microsoft Excel spreadsheets. I understand that Plaintiffs' counsel produced 77 Excel spreadsheets to the City. (Eight of those spreadsheets were largely duplicative of others produced, and the duplicate records were excluded from the analysis). With assistance, I have compiled these spreadsheets into a single database using Microsoft Access. I will refer to this database as the Paper Record Database, which contains 1,203,510 distinct records.

5. The automated arrest records were produced by the Chicago Police Department in Microsoft Access format. I will refer to this database as the Automated Arrest Database, which contains 965,573 records.

6. I also received from the Chicago Police Department the CRIS database which consisted of computerized records kept from 1999 through 2007 as a backup system to the Paper Arrest Reports. The CRIS database does not contain all of the fields noted on a Paper Arrest Report, and there are unique records in the CRIS database that are not contained in the Paper Record Database.

7. With respect to the Paper Record Database, the data were imperfect in that for many records, data were missing or flawed for certain fields, including the fields that would enable one to determine the length of a particular arrestee's detention. In many cases, it appears that the CPD personnel neglected to record relevant data, and in other cases, the failure of the data-entry firm to properly capture the relevant data led to flawed information. With respect to the Automated Arrest Database, the data were also imperfect, but proportionately many more records were complete. Where the data was missing either arrest date or time or release date or time information, I used the proxies agreed upon by the parties and contained within the Settlement Agreement for the missing information.

8. Prior to the analysis of the many data requests, I met and conferred with the defense counsel, as well as CPD personnel, to discuss the contents of the data and parameters of the individual queries.

9. I ran queries through all of the data for each class. For Class I, I determined whether there was greater than 16 hours between the time of arrest and the time the arrestee was received in lock up. I also ran queries to determine whether there was greater than 16 hours between the movement logs for an arrestee. The movement log indicated when an arrestee moved from place to place within CPD custody. All persons who had greater than 16 hours between arrest and received in lockup or between movement logs were placed on the list of potential class members for Class I. Because many of these records contained notations that indicated that the cause of the greater than 16-hour gap may not have been related to being held in an interview room, none of these persons could be definitively verified as a class member without individual analysis. All persons who were missing information to make these determinations or for whom the queries resulted in negative times held were also placed on the

list of potential class members for Class I. I then removed duplicate records and sent this list of potential class members for Class I to Rust Consulting, Inc., the claim administration firm tasked with sending out Notice Packets. This list of persons was over-inclusive as to class membership. These individuals were to receive Notice with a non-prepopulated claim form for Class I.

10. For Class II, I determined whether an arrestee was in custody prior to 10 pm on a given date and not released until after 6 am on the following day. I placed all records resulting from this query on the list of verified class members for Class II. Further, I placed on the list of potential class members for Class II all persons who were missing information to make this determination, all persons for whom I used proxies to make this determination and all persons for whom the query resulted in negative times held. This list of persons was over-inclusive as to class membership. I then removed duplicate records and sent these lists of verified and potential class members for Class II to Rust Consulting, Inc., the claim administration firm tasked with sending out Notice Packets. The verified class members were to receive Notice with a pre-populated claim form for Class II. The individuals on the potential class member list were to receive Notice with a non-prepopulated claim form for Class II.

11. For Class III, I determined whether an arrestee, arrested on suspicion of a felony and without a warrant, was in custody longer than 48 hours between arrest and appearance in court for a probable cause hearing. I placed all records resulting from this query on the list of verified class members for Class III. Further, I placed on the list of potential class members for Class III all persons who were missing information to make this determination, all persons for whom I used proxies to make this determination and all persons for whom the query resulted in negative times held. This list of persons was over-inclusive as to class membership. I then removed duplicate records and sent these lists of verified and potential class members for Class

III to Rust Consulting, Inc., the claim administration firm tasked with sending out Notice Packets. The verified class members were to receive Notice with a pre-populated claim form for Class III. The individuals on the potential class member list were to receive Notice with a non-prepopulated claim form for Class III.

12. I provided all of the protocols used in fashioning the queries for each class to Rust Consulting, Inc. Further, I have had numerous discussion with the persons at Rust Consulting, Inc. who are tasked with sending out Notice Packets and verifying claims as they are filed on the subject matter of analyzing the data and determining class membership.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Ted Dabrowski

CH2\9152634.1

5